## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FIDELITY AND GUARANTY LIFE INSURANCE CO. | * |
| | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * |
| | * |
| CNA FINANCIAL CORPORATION | * |
| | * |
| and | * |
| | * |
| CONTINENTAL ASSURANCE CO. | * |
| | * |
| and | * |
| | * |
| VALLEY FORGE LIFE INSURANCE CO. | * |
| | * |
| and | * |
| | * |
| KENNETH D. KEATING | * |
| | * |
| Defendants | * |

Civil Action No.
AMD-020CV-2317

_____/

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL
## RESPONSES OF CNA TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF
## DOCUMENTS

### I.    INTRODUCTION

On June 12, 2002, Plaintiff Fidelity and Guaranty Life Insurance Co. ("Plaintiff") filed its

Complaint against Defendants Ken Keating and CNA ("Defendants").  The issues presented

concern Defendant Keating's breach of his Non-Solicitation Agreement ("the Agreement") and

Defendant CNA's tortious interference with contractual relations[1] and business relations.

As part of discovery[2], Plaintiff served CNA with its Second Request for Production of

Documents on January 22, 2003.   Plaintiff received CNA's Response thereto on or about March

10, 2003.

CNA has been nonresponsive to certain Requests.  The parties have exchanged  letters

regarding the Requests at issue. (See Exhibit 1, Letters dated April 2 (from Pat Pilachowski to

Ron Harris, Exhibit 1A) and April 4 (from Ron Harris to Pat Pilachowski, Exhibit 1B).  In an

effort to resolve the issue, Plaintiff limited the Requests at issue, but even with this limitation,

Defendant CNA has refused to provide responsive documents. (See Exhibit 2, Letters dated May

22 (from Pat Pilachowski to Ron Harris, Exhibit 2A), June 5 (from Pat Pilachowski to Ron

Harris, Exhibit 2B) and June 10 (from Ron Harris to Pat Pilachowski, Exhibit 2C).  The letters

have not resolved the parties' dispute.

---

[1]  Although not a party to this action, Plaintiff's former Chief Marketing Officer, Tony Wilkey,
also left Plaintiff's employ to work for Defendant, and Wilkey's Confidential Separation
Agreement, in addition to Defendant Keating's Non-Solicitation Agreement, together form the
basis for Plaintiff's claims against Defendant CNA for interference with contractual relations.

[2]  Because the facts and issues presented by this lawsuit are related to the claims Plaintiff has
against Tony Wilkey, which must by the terms of his Confidential Separation Agreement, be
heard by an arbitrator, Plaintiff and Defendant CNA agreed to coordinate discovery in this court
matter and the arbitration matter.  Discovery has been ongoing since last year, and the parties
have exchanged volumes of documents and produced substantial amounts of computer
discovery.  While there have been numerous issues that have arisen during the course of
discovery, particularly with computer production, the parties have generally been able to work
them out amicably.  This Motion is an exception.

2

Plaintiff's Requests are proper, pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, because they are related to its claims and may lead to the discovery of admissible evidence.

## I.  THE REQUESTS AT ISSUE

### A.  The Requests

Pursuant to Local Rule 104.8(a), Plaintiff sets forth below: (1) the request, (2) CNA's response thereto, and (3) Plaintiff's asserted basis for the insufficiency of CNA's response:

**Request No. 1**.  All documents (including electronic communications as defined above) sent to or received from the following MGAs (or their representatives) in 2001, 2002 or 2003 relating to Maximizer or Maximizer Select:

    (1)    Epic;

    (2)    Affiliated Mortgage Protection;

    (3)    The Life Store;

    (4)    MV Group;

    (5)    Ara Megerdechyan;

    (6)    James Lehmann;

    (7)    Dennis King;

    (8)    Matt Goldberg;

    (9)    Tom Liscio

    (10)    Dick Markarian;

    (11)    Dan Redfern; and

    (12)    Dwight Carter.

Response:  Defendant objects to this request as overly broad, burdensome, vague and not reasonably calculated to lead to discovery of admissible evidence…..  Defendant further objects to the request as improperly seeking to discover Defendants' confidential and proprietary information.

Plaintiff's Narrowing of the Request:

By letter of May 22, 2003, Plaintiff narrowed the Request to documents: (1) from 2001 and 2002 only and (2) relating to the following three MGAs – ACA or Gerald Policastro, Affiliated Mortgage Protection (Matt Goldberg), and Jim Lehmann.

By letter of June 10, 2003, Defendants' counsel again objected to the alleged overbreadth of the discovery and refused to produce any documents.

Asserted Basis For The Insufficiency Of This Response:

CNA's boilerplate objections are without foundation.  The basis of Plaintiff's claim is that Respondent violated the terms of his Agreement by soliciting Plaintiff's customers and using Plaintiff's confidential information to his own benefit and/or for the benefit of another employer, CNA.   Thus, Plaintiff is entitled to discover what, if any, documents that CNA has that involve specific MGAs (Plaintiff's customers), relating to the specific product that the parties have agreed to focus on, for the relevant time period.

**Request No. 2**.  All records pertaining to communications between CNA employees and any MGA selling Maximizer or Maximizer Select in 2001, 2002, or 2003, including, but not limited to, notes, memos, or records of in-person meetings, telephone communications, logs, planners, scheduling books, e-mails, faxes, correspondence, and phone records.

Response: Defendant objects to this request as overly broad, burdensome, vague and not reasonably calculated to lead to discovery of admissible evidence. Defendant further objects to the request as improperly seeking to discover Defendants' confidential and proprietary information.

Plaintiff's Narrowing of the Request:

By letter of May 22, 2003, Plaintiff narrowed the Request to documents: (1) from 2001 and 2002 only and (2) relating to the following three MGAs – ACA or Gerald Policastro, Affiliated Mortgage Protection (Matt Goldberg), and Jim Lehmann.

By letter of June 10, 2003, Defendants' counsel again objected to the alleged overbreadth of the discovery and did not produce any documents.

Asserted Basis For The Insufficiency Of This Response:

Defendant's boilerplate objections are without foundation. In its Responses to Request Nos. 1 and 2, CNA asserts that the Requests are overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Request Nos. 1 and 2 have been narrowly tailored to retrieve specific information relevant to this lawsuit. The Requests link communications between CNA and those MGAs that are relevant to this litigation, i.e., those who are explicitly named in Wilkey's Confidential Separation Agreement and those who sell CNA's Maximizer and Maximizer products, which compete directly with Plaintiff's HomeCertain product.

CNA fails to establish how these Requests might be burdensome. It is the objecting party's burden to demonstrate the basis for a claim of burdensomeness. Likewise, CNA's

conclusory assertion that this request is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence is without foundation.

### B.    Plaintiff is Entitled to Responses to the Requests

The basis of Plaintiff's claim is that it is entitled to damages because Defendants CNA and Ken Keating and Tony Wilkey used Plaintiff's confidential information to their own benefit and that Defendant Keating breached his contractual restrictions on customer/client solicitations. Thus, Plaintiff is entitled to discover CNA's actual sales or attempted sales activities to determine whether or not CNA has used and/or benefited by the use of Plaintiff's protected business information, in violation of agreements between it and Defendant Keating and former employee Tony Wilkey.

Thus, Plaintiff is entitled to discover what, if any, files or documents Respondent has that reflect CNA's efforts with regard to those MGAs, agents, customers, or clients with whom Keating and Wilkey were in contact during the course of their employment with Plaintiff.

<u>Request No. 3:</u> All documents relating to the hiring of Tony Wilkey, Ken Keating, Julie Hince, Amy Mullins, Sean Gibbons, Gary Burke.

<u>Response</u>: Defendant objects to this request as overly broad, burdensome, vague and not reasonably calculated to lead to discovery of admissible evidence. …

<u>Asserted Basis For The Insufficiency Of The Response:</u>

CNA's boilerplate objections are without foundation any kind. CNA has asserted in a letter concerning this discovery dispute that it has "produced what was contained in the individual's personnel file." (See Exhibit 2B, letter of April 4, 2003 from Ron Harris to Pat Pilachowski, p.3). While Defendant CNA's characterization of its production may indeed be

6

accurate, it nevertheless fails to address what Defendant actually requested:  documents relating

to the "hiring of," not documents relating to the "personnel files of."  Plaintiff has received

nothing relating to the hiring of these individuals, and Defendant CNA has not sworn that none

exist.

## III.    THE RELEVANCE OF THE REQUESTS

Defendant Keating's Nonsolicitation Agreement states, in relevant part, as follows:

> The Employee acknowledges that his employment with the company will, of
> necessity, provide him with specialized knowledge, unique knowledge which, if
> used in competition with the Company, could cause harm to the Company which
> is engaged in a highly competitive business.  The Employee further acknowledges
> that while employed with the Company, the Employee will have access to the
> Company's valuable current and prospective agencies, agents, and employees, and
> that the Company will be making a substantial investment in the development of
> relationships between the Employee and the Company's current and prospective
> agencies, agents and employees.  In consideration of the foregoing, the Employee
> agrees as follows:
>
> 1.      For a period of one (1) year after the Employee is no longer employed by
> the Company, whether this separation is voluntary or involuntary, the Employee
> will not, directly or indirectly, for himself or on behalf of, or in conjunction with,
> any person, partnership, corporation, or other entity, solicit or initiate the
> solicitation of any agencies, agents, or employees which were current or
> prospective agencies, agents, or employees of the Company at any time during the
> Employee's employment by the Company.  The Employee further agrees that,
> during the one year period after the Employee is no longer employed by the
> Company, the Employee will not, without the Company's written consent, contact
> any such agency, agent, or employee to inquire about a prospective business
> relationship, and if the Employee is contacted by any such agency, agent, or
> employee to inquire about a prospective business relationship, the Employee will
> inform such agency, agent, or employee, that he cannot discuss the matter further
> without informing the Company.   (Emphasis added.)
>
> (See Complaint, Ex. X, Agreement).

Wilkey's Confidential Separation Agreement states, in relevant part:

III.E.  Confidential Information.  Employee acknowledges that he has had access to confidential business information that is not generally known outside F&G Life including without limitation, insurance agency and producer lists (including without limitation those listed on Exhibit A hereto), policyholder lists, trade secrets, product design information, pricing policies and other business affairs of F&G Life ("Confidential Information).  For all time, Employee agrees that he shall not, without the proper written authorization of F&G Life, directly or indirectly use, divulge, furnish or make accessible to any person any Confidential Information, but instead shall keep all Confidential Information strictly and absolutely confidential. Employee will use reasonable and prudent care to safeguard and prevent the unauthorized use or disclosure of Confidential Information.  In the event Employee is required to disclose by law or an order of a court of competent jurisdiction, he shall provide F&G Life with reasonable notice and a reasonable opportunity to seek a protective order to prevent such disclosure.

III.F.  Solicitation of Employees.     Employee shall not, at any time prior to the Separation Date or during the twelve (12) month period following the Separation Date, solicit, participate in or promote the solicitation of any Sales Channel Head, direct or indirect report or any other person actively employed by F&G Life to leave the employ of F&G Life or, on behalf of Employee or any other person, hire, employ or engage any such actively employed person.

III.G.  Solicitation of Clients, Customers, Etc.  Employee shall not, at any time prior to the Separation Date or during the twelve (12) month period following the Separation Date, directly or indirectly, solicit any person, firm or corporation which as of the Separation Date or at anytime during the term of Employee's employment was a client, customer, policyholder, vendor, consultant, Power Partner, contracted marketing organization (including without limitation those identified on Exhibit A hereto), or agent of F&G Life, to become a client, customer, policyholder, vendor, consultant, contracted marketing organization or agent of any other person, firm or corporation.  Notwithstanding the foregoing, Employee shall not be deemed to have breached this Section III (G) solely due to his becoming employed by, affiliated with or acting on behalf of a person, firm or corporation which, as of the date of this Agreement, has a pre-existing, bona fide business relationship with any such client, customer, policyholder, vendor, consultant, Power Partner, contracted marketing organization or agent of F&G Life; it being further understood and agreed, however, that at no time prior to the Separation Date and during the twelve (12) month period following the Separation Date shall Employee solicit any such client, customer, policyholder, vendor, consultant, Power Partner, contract marketing organization, or agent of F&G Life to discontinue or decrease the level of business, in whole or in part, with F&G Life, and/or to move that business elsewhere.  Employee further agrees

8

that, during such time, if such a client, customer, policyholder, vendor, consultant, Power Partner, contracted marketing organization or agent contacts Employee about discontinuing or deceasing the level of business with F&G Life and/or moving that business elsewhere, Employee will inform such client, customer, policyholder, vendor, consultant, Power Partner, contracted marketing organization or agent that Employee cannot discuss the matter without informing F&G Life. Prior to any further discussion of the matter, Employee is obligated to notify F&G Life of the name of the person who made the contact, the customer, policyholder, vendor, consultant, Power Partner, contracted marketing organization or agent with whom the person is affiliated, and the nature and the date of the contact.

(emphasis added) (See Complaint, Exhibit X, Separation Agreement).

Thus, Plaintiff is entitled to discover documents relating to solicitation (of both MGAs and employees) and confidential information. The Requests, as narrowly tailored by Plaintiff's counsel's letter of May 22, relate to a select set of MGAs that Plaintiff has based its damages upon, the products at issue, and a limited timeframe that relates to the year prior to Defendant Keating and Wilkey's employment by Defendant CNA and the first year that they were employed. These requests go to the very heart of the issues presented here.

We anticipate that the responses as to the year 2001, the year prior to Defendant CNA's employment of Keating and Wilkey, would reveal no contacts whatsoever between CNA and any of the listed MGAs, and that the contact between CNA and the listed MGAs started only in 2002, when Wilkey and Keating left F & G's employ and began working for CNA.

9

Respectfully submitted,

SHAWE & ROSENTHAL, LLP


_____/s/_____
Stephen D. Shawe
Patrick Pilachowski
20 S. Charles Street
Baltimore, Maryland 21201
Phone (410) 752-1040
Fax (410) 752-8861

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Plaintiff's Motion to Compel Responses to

Plaintiff's Second Request for Production of Documents, Memorandum in support thereof, and

Exhibits were electronically filed in this case on this 27th day of June, 2003.  In the event that

counsel for Defendants is not registered with the Court, a paper copy will be served via U. S.

Mail, postage prepaid, upon:

Gregg L. Bernstein, Esq.
Martin, Snyder & Bernstein, PA
217 E. Redwood St., Suite 2000
Baltimore, MD 21202

Ronald G. Harris, Esq.
Neal & Harwell, PLC
150 Fourth Avenue, North, Suite 2000
Nashville, TN 37219


_____/s/_____
Patrick M. Pilachowski

82057.1

10