## NEAL & HARWELL, PLC
LAW OFFICES
150 FOURTH AVENUE, NORTH
SUITE 2000
NASHVILLE, TENNESSEE 37219-2498

TELEPHONE
(615) 244-1713

FACSIMILE
(615) 726-0573

Exhibit 1B

JAMES F. NEAL
AUBREY B. HARWELL, JR.
JON D. ROSS
JAMES F. SANDERS
THOMAS H. DUNDON
RONALD G. HARRIS
ALBERT F. MOORE
PHILIP N. ELBERT
JAMES G. THOMAS
WILLIAM T. RAMSEY
JAMES R. KELLEY
MARC T. McNAMEE
GEORGE H. CATE, III
PHILIP D. IRWIN
A. SCOTT ROSS
GERALD D. NEENAN

AUBREY B. HARWELL, III
W. DAVID BRIDGERS
KENDRA E. SAMSON
MARK P. CHALOS
DAVID G. THOMPSON
CYNTHIA S. PARSON
KELTIE L. HAYS

OF COUNSEL
JOHN D. CLARKE
KENNETH M. JACKSON

April 4, 2003

Patrick M. Pilachowski, Esq.
Shawe & Rosenthal, LLP
Sun Life Building
20 South Charles Street
Baltimore, MD 21201

VIA FAX # (410) 752-8861

RE: F & G Life Insurance Co. v. CNA Financial Corporation, et al.
U. S. District Court for the District of Maryland, No. AMD-020CV-2317

Dear Pat:

This is a response to your letter dated April 2, 2003, concerning CNA's Response to Plaintiff's Second Request for Production of Documents. We respectfully disagree with the positions you have taken regarding our objections or alleged lack of production as expressed in your letter.

Your letter takes issue with our objections on Requests No. 1 and No. 2 in that set of discovery. Although your letter claims these requests are "narrowly tailored to retrieve specific information relevant for this litigation," these requests are so broad and non-specific that it appears to us that their actual purpose is simply to make this litigation as burdensome, expensive and disruptive as possible for our clients.

Our prior objections to your Requests Nos. 1 and 2 were based primarily on the overbreadth and obviously burdensome nature in requiring the Defendants to search through so many possible sources, without any more specific direction to potentially relevant information. Your Request No. 1 asks for:

> "All documents (including electronic communications) sent to or received from the following MGAs in 2001, 2002, or 2003 relating to Maximizer or Maximizer Select..."

There is no limitation on the type of document sought. By its terms, this request simply asks for all documents, including e-mails, sent to or received from the listed MGAs for the time period 2001, 2002 or 2003. There is no real limitation or specification of the subject matter, as it seeks

Patrick M. Pilachowski, Esq.
Page 2
April 4, 2003

all documents "relating to Maximizer or Maximizer Select." Thus, this request would require that all insurance applications, all insurance policies, all invoices, all payments, all inquiries, all memorandum, all correspondence, all forms, and simply everything "relating" to those two products be searched for and collected, regardless of who within CNA may have them. This is an exercise that would be extremely burdensome and also unnecessary, since it would likely yield few, if any, additional documents relevant to this litigation.

As you state in your letter, this litigation is about Tony Wilkey's and Ken Keating's alleged violations of certain restrictive covenants. Neither Request No. 1 nor Request No. 2 is limited to Mr. Wilkey or Mr. Keating, but rather they are directed to any and all CNA employees who may have any involvement whatsoever with these insurance products. Your letter claims you need this information "to discover Defendant's sales or attempted sales activities." We have furnished you information which specifically lists the "sales" for each of the MGAs who sell Maximizer and Maximizer Select. Additionally, you have also been furnished numerous other documents and have taken the depositions of the MGAs, Mr. Wilkey, Mr. Keating, and others on these subjects.

Your Request No. 2 asks for,

All records pertaining to communications between CNA employees and any MG selling Maximizer or Maximizer Select in 2001, 20902, or 2003, including but not limited to notes, memos, or records of in-person, meetings, telephone communications, logs, planners, scheduling books, e-mails, faxes, correspondence, and phone records.

On its face, this request seeks all records "pertaining to" any communication between any CNA employee and any MGA selling these products in 2001, 2002 and 2003 without regard to the type of documents or subject matter. It is hard to imagine a more overly broad, or less "narrowly tailored," request. This request is not limited to seeking information about Mr. Wilkey or Mr. Keating, but applies to all CNA employees. The overbreadth of this request is also amply demonstrated by the list of the type of documents which are "included" among those requested, such as notes, correspondence, e-mails, phone records, planners, for any CNA employee who may have had a communication with any MGA selling these products for this whole time period. As with Request No. 1, CNA should not be required to search every potential source for every potential document that might fit this extremely broad request. This is particularly true when there is little demonstrated relevance of the documents, beyond what F&G already has obtained or learned in this litigation.

Rule 34 of the Federal Rules of Civil Procedure requires that document requests describe the documents sought with "reasonable particularity." Your Requests Nos. 1 and 2 do not comply with such rule, but are simply an attempt to throw the broadest net possible over all CNA

Patrick M. Pilachowski, Esq.
Page 3
April 4, 2003

documents relating to these insurance products. These requests are so unrealistic and so burdensome, we have to believe they are submitted primarily to make this litigation as burdensome as possible for our clients. This seems particularly true in light of the information you have already received to date in this litigation.

As to Request No. 3, you requested "All documents relating to the hiring of" six CNA employees. Although this is a broad and non-specific description of the requested documents, we have, subject to our objections, produced responsive documents for all of the listed employees except Gary Burke and Sean Gibbons. Our objection to producing any records relating to these former F&G employees is that, as the deposition testimony in this action has shown, both Mr. Burke and Mr. Gibbons left F&G well before either Mr. Wilkey or Mr. Keating. Although your letter states that you are "not obligated to accept Defendant's characterizations of the responsive documents," it does not give us any indication how you contend documents relating to Mr. Burke's or Mr. Gibbins' hiring are possibly relevant to the issues in this case. As former F&G employees who were terminated before Mr. Keating and Mr. Wilkey left, we do not believe that they would fit into the category of employees that F&G is even claiming are at issue in this litigation. We would be happy to discuss this issue further if you indeed have a theory regarding the possible relevance of Mr. Burke's or Mr. Gibbins' personnel files.

Your letter also complains about the alleged "limited documentation" relating to the hiring of the other individuals. In each case, we have produced what was contained in the individual's personnel file. Your speculation about what documents you think should exist in our client's files (resumes, etc) is misplaced. Although you may be "skeptical" about an alleged lack of communication between the individuals mentioned in your letter, you should review the deposition testimony and documents already produced. Several witnesses have testified in their depositions about their communications or lack thereof. Moreover, every communication does not necessarily lead to the creation of documents, much less any responsive documents beyond those already produced. A Motion to Compel would not result in any further document production in this category.

We have tried to explain the problems with your Request No. 5 relating to the vague request for documents relating to "start-up costs" for Maximizer. We have furnished witnesses who testified about this subject and who have told you that what you are seeking does not readily translate into the way CNA keeps records or computes costs. See 30(b)(6) deposition of Tony Wilkey. We will be happy to try and clarify this issue again, but we believe that F&G is simply referencing the way it has internally accounted for or computed "start-up" costs for Home Certain when, in fact, CNA does not account for or keep similar information in that manner.

As regards document K0941, it was prepared by the corporate designee who was asked to testify concerning the "profits" on Maximizer product in connection with the 30(b)(6)

Patrick M. Pilachowski, Esq.
Page 4
April 4, 2003

depositions. Mr. Scott Cochran was made available to answer questions on that document and that issue.

As to your question regarding the documents produced pursuant to our agreement as "attorneys' eyes only/highly confidential," those were actuarial documents which were produced pursuant to Request No. 6. This request was another broad, non-specific request for "All documents containing product development actuarial information." Subject to our objections, we produced the aforementioned "attorneys' eyes only" information and *also* produced a substantial amount of other information from the actuarial group, which was identified at the depositions in Nashville.

In summary, we have spent a great deal of time and effort responding to your discovery requests and, in fact, have produced a significant number of documents to you in this litigation. As previously mentioned, we are concerned that these continuing waves of overbroad discovery requests are designed to make the litigation as expensive and burdensome as possible to CNA, Mr. Wilkey and Mr. Keating, rather than being designed to locate relevant evidence or prepare the cases for hearing.

We have been, and remain, willing to discuss these discovery issues with you. Your April 2 letter, however, does not even attempt to narrow any of your overly broad requests. Your letter wholly fails to articulate any specific basis for why you should be allowed to receive the documents we have objected to producing on overbreadth and relevance grounds. We believe our responses and objections are well-founded and would be sustained if you decide to file a Motion to Compel, as your letter threatens.

Sincerely,

NEAL & HARWELL, PLC

Ronald G. Harris

RGH/prd