**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| FIDELITY AND GUARANTY LIFE INSURANCE CO., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| CNA FINANCIAL CORPORATION, CONTINENTAL ASSURANCE CO., VALLEY FORGE LIFE INSURANCE CO., and KENNETH D. KEATING, | ) ) ) ) ) |
| Defendants. | ) |

No. AMD-020CV-2317

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL RESPONSES TO PLAINTIFF'S SECOND
REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendants CNA Financial Corporation, Continental Assurance Co., Valley Forge Life Insurance Co. (collectively referred to herein as "CNA") and Kenneth D. Keating submit this Memorandum in Opposition to Plaintiff's Motion to Compel Responses to Plaintiff's Second Request for Production of Documents. As set forth herein, Plaintiff's discovery requests do not comply with the requirements of Rule 34 of the Federal Rules of Civil Procedure and are overly broad, unduly burdensome and unnecessary at this stage of the litigation. Plaintiff has also failed to comply with the Local Rules of Court in filing its Motion to Compel. For the reasons contained herein, the Plaintiff's Motion to Compel should be denied and Defendants awarded all their costs and attorneys' fees incurred for responding thereto.

**PROCEDURAL BACKGROUND**

Plaintiff filed this action against the Defendants in July 2002 and sought a temporary restraining order against Mr. Keating and CNA, which was denied. Plaintiff never sought a preliminary injunction hearing.

Plaintiff had previously filed a related arbitration claim against CNA employee Tony Wilkey with the American Arbitration Association. Counsel for Plaintiff and Defendants agreed to consolidate the discovery for use in both the arbitration claim and this action. Defendants have produced numerous documents to Plaintiff and numerous depositions have been taken in the year since the actions were filed.

Plaintiff's arbitration claim was heard for eight full days beginning May 28, 2003, and ending late Friday afternoon, June 27, 2003. Defendants' counsel received a copy of Plaintiff's Motion to Compel for the first time Friday afternoon, June 27, the last day of the arbitration hearing, at approximately 5:00 p.m. Plaintiff's Motion to Compel was filed with this Court earlier that same afternoon. In this Memorandum Defendants set forth the numerous reasons that Plaintiff's Motion to Compel must be denied and Defendants awarded their costs and attorneys' fees.

**AUTHORITY AND ARGUMENT**

I.  **THE DISCOVERY REQUESTS AT ISSUE ARE OVERLY BROAD, UNDULY BURDENSOME, VAGUE AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Rule 34 of the Federal Rules of Civil Procedure requires that a party requesting documents "shall set forth, either by individual item or by category, the items to be inspected and describe each with reasonable particularity." (Emphasis supplied.) Contrary to that requirement,

Plaintiff has attempted to throw the broadest "net" possible over the Defendants, fishing for anything and everything on a very broad scale, without regard to possible relevance of the documents that might be considered responsive.

Rule 26(b) of the Federal Rules of Civil Procedure provides that a court may limit the frequency or extent of the use of discovery methods otherwise permitted by the rules if the court determines any of the following situations apply:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive;
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake and the importance of the proposed discovery in resolving the issues.

Each of the foregoing factors apply to the overly broad and unduly burdensome discovery which is being pursued by Plaintiff at this stage of the litigation. Based upon Defendants' proper objections and Rule 26(b), the Court should deny the Plaintiff's Motion to Compel.

It is simply ridiculous and without any basis in reality for Plaintiff to argue that the discovery requests at issue are "narrowly tailored to retrieve specific information relevant to this lawsuit." Plaintiff's Memorandum in Support at pp. 5, 9. Plaintiff's alleged "narrowing" of their requests in its May 22, 2003, letter did not cure the overbreadth and burdensome nature of these requests.

The three discovery requests at issue were contained within Plaintiff's Second Request for Production of Documents which Plaintiff served on or about January 22, 2003. A copy of the Defendants' Response dated March 7, 2003, is attached hereto as Exhibit 1. A review of each of the three requests at issue and Defendants' responses amply demonstrates that Defendants'

objections are well-taken and no further discovery should be ordered as to these improper requests.

A.   Document Production Request No. 1.

As originally drafted, Plaintiff's Request No. 1 in its Second Request for Production of Documents requested the following documents:

> All documents (including electronic communications as defined above) sent to or received from the following MGAs (or their representatives) in 2001, 2002 or 2003 relating to Maximizer or Maximizer Select.
>
> (1)   Epic;
> (2)   Affiliated Mortgage Protection;
> (3)   The Life Store;
> (4)   MV Group;
> (5)   Ara Megerdechyan;
> (6)   James Lehmann;
> (7)   Dennis King;
> (8)   Matt Goldberg;
> (9)   Tom Liscio;
> (10)  Dick Markarian;
> (11)  Dan Redfern; and
> (12)  Dwight Carter.

(Contrary to Plaintiff's assertion, the term "electronic communications" was not "defined above" or anywhere in the request.)

In their March 7 response, Defendants stated as follows:

> **RESPONSE:**   Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Exhibit 1.

As used in these requests, the term "MGA" means "Master General Agent" and refers to the large marketing organizations that have thousands of agents working to sell and distribute certain insurance products. The terms "Maximizer" and "Maximizer Select" refer to two of CNA's life insurance products which it sells through its MGA's and other means of distribution.

It is obvious from simply reading this request that it is overly broad and would be extremely burdensome for Defendants to be required to try and produce responsive documents. As drafted, and as even allegedly "narrowed," Plaintiff's request is <u>not</u> limited to any type of document or any category of documents. As narrowed, Plaintiff seeks "all documents," sent to or received from certain MGA's for a two-year period for anyone and everyone at CNA. There is no real limitation or specification of the subject matter, as it seeks all documents "relating to Maximizer or Maximizer Select." It is not limited to documents sent or received by Mr. Keating and Mr. Wilkey or any particular individuals, or even any specific department, but rather would require a search of anyone within the entire CNA organization that has had any possible involvement of whatever nature with these two life insurance products.

As Defendants' counsel have advised Plaintiff's counsel on more than one occasion, this request would require that all applications for insurance, all insurance policies, all invoices, all payments, all inquiries, all memorandum and correspondence, notes, all forms sent out or returned and simply every piece of paper (and electronic communication) "relating" to those two products be searched for and collected, regardless of who in CNA may possibly have them, regardless of the subject matter and regardless of their possible relevance to this litigation. <u>See</u>, e.g., Letters attached as Exhibits 1B and 2C to Plaintiff's Memorandum.

As demonstrated during the arbitration, just the application forms submitted to CNA for these two products through these specific MGAs for less than a two-year time period number in the thousands. Plaintiff's broad request would require Defendants to search numerous sources within the CNA organization for, at best, only marginally relevant documents. Indeed, such documents as checks to and from agents, changes of address forms, questions on company procedure and other innocuous and irrelevant material might be considered responsive under this

overly broad and general request. To the extent the request may seek the search of all computers at CNA for possibly responsive "documents," it is even more burdensome. This extremely burdensome exercise should not be required, because Plaintiff's requests are non-specific and unfocused and would likely yield few, if any, documents relevant to this litigation which have not already been provided. As described below, the electronic images of the computers and email files of Mr. Keating and Mr. Wilkey have previously been produced to Plaintiff.

      B.     <u>Document Production Request No. 2</u>.

As originally drafted, Request No. 2 in Plaintiff's Second Request for Production of Documents sought the following documents:

> "All records pertaining to communications between CNA employees and any MGA selling Maximizer or Maximizer Select in 2001, 2002, or 2003, including, but not limited to notes, memos, or records of in-person meetings, telephone communications, logs, planners, scheduling books, e-mails, faxes, correspondence, and phone records."

Defendants responded on March 7 as follows:

> **RESPONSE:** Defendants object to this request as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Exhibit 1.

The overbreadth and extremely burdensome nature of this request is also evident on its face. This request seeks all documents which might be considered as "pertaining to" any communication between any CNA employee and any MGA (subsequently limited to the three or four largest MGA's by the May 22, 2003, letter), without regard to subject matter of the communication or type of document for a three-year period (subsequently limited to two years). For the reasons articulated above, the motion to compel production of documents sought in this request should likewise be denied. A request "pertaining to communications" between CNA and

the representatives or agents of these large marketing organizations does not describe with "reasonable particularity" the documents sought to be produced, as required by Rule 34. As stated above, the requests are not limited to Mr. Wilkey and Mr. Keating, the two individuals who allegedly have the non-solicitation agreements at issue, and are not limited as to subject matter. It is extremely burdensome to attempt to comply with this request and furthermore it is not realistically possible for CNA to locate all documents that might fit within such an unfocused, poorly described request.

Similar to Request No. 1, Plaintiff seeks documents from any and all persons at CNA who may have had any involvement at any stage of advertising, selling, issuing, underwriting or otherwise processing applications or insurance policies for two life insurance products, without regard to subject matter or type of document. There is no file cabinet or set of drawers CNA can go to and simply pull out responsive documents. There are no specific individuals or even a specific department CNA can go to and inquire about a specific category or type of documents. Searching for these documents as poorly and broadly described as in Plaintiff's requests, for an organization the size of CNA, would require a tremendous amount of time, effort and expense. It is difficult to imagine a more burdensome task or, in this case, a more unnecessary one.

Although counsel have exchanged letters concerning these overly broad and burdensome requests, Plaintiff has declined to narrow the requests in any meaningful way. Indeed, the only "narrowing" which Plaintiff touts in its Memorandum are simply removing one irrelevant year, 2003, from the time frame of the request and reducing the number of MGA's at issue, while leaving the largest volume producers within the scope of the revised request.[1]

---

[1] Although Plaintiff has repeatedly advised the court that it has "narrowed" its requests by cutting the number of MGAs to those listed in its May 22 letter, it fails to advise the court that it has propounded essentially the same request with additional MGAs in a new Fourth Request for Production of Documents on May 21, 2003. Many of the MGAs allegedly subtracted from the requests now at issue were added back in this new belated request.

Plaintiff's Memorandum characterizes Defendants' objections as "boilerplate" and states that "CNA fails to establish how these Requests might be burdensome." Memorandum p. 5. Nothing could be further from the truth or more divorced from reality. Defendants have repeatedly advised Plaintiff's counsel of the reasons the requests at issue are unduly burdensome and improper. See Letters attached as Exhibit 1B and 2C to Plaintiff's Memorandum.

In their letters to Defendants' counsel on these issues, Plaintiff's counsel would never articulate the specific reasons for such broad requests or demonstrate the specific relevance of the documents they were requesting. Instead, Plaintiff only stated its alleged need or the alleged relevance of documents sought in the most general way, simply pointing to the terms of Mr. Wilkey's and Mr. Keating's non-solicitation agreements and then making conclusory arguments such as the requests are "relevant to the issues at hand." See, e.g., Plaintiff's May 22, 2003, letter and Plaintiff's April 4, 2003, letter.

Plaintiff again takes this approach in its Memorandum in Support of its Motion to Compel, citing at length from the non-solicitation agreements of Mr. Keating and Mr. Wilkey but then failing to sufficiently link the provisions in those agreements to its broad requests for documents. Plaintiff's general unsupported conclusory arguments that the requested documents are "relevant to this litigation" or "go to the very heart of issues presented here" do nothing to demonstrate the need for, or relevance of, the broad scope of documents requested.

C.   Document Production Request No. 3.

Plaintiff's Request No. 3 in the second set of document production requests, requests the following documents:

> All documents relating to the hiring of Tony Wilkey, Ken Keating, Julie Hince, Amy Mullins, Sean Gibbons, Gary Burke.

Defendants' full response on March 7 was as follows:

>**RESPONSE:** Defendants object to this request as overly broad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Documents relating to the hiring of Gary Burke and Sean Gibbons have no relevance to this proceeding. Without waiving such objections or any of the General Objections, Defendants will provide documents relating to the hiring of the other individuals.

In addition to their objection to this request, Defendants produced what they considered responsive documents. Plaintiff's statement at page 7 of its Memorandum that it "has received nothing relating to the hiring of these individuals" is disingenuous and simply wrong. Defendants produced responsive documents which included the personnel files of Mr. Wilkey, Mr. Keating, Ms. Hince and Ms. Mullins. These files contained resumes, job applications, employment agreements, correspondence and other documents which might be considered within the broad term Plaintiff used as documents "relating to the hiring" of these individuals.[2] Defendants have also produced to Plaintiff certain correspondence, memorandum, calendars and the computers of Mr. Wilkey and Mr. Keating, the two individuals who allegedly have the non-solicitation agreements. Defendants are not currently aware of any additional documents that may fit within the request as Defendants understand it. To the extent Plaintiff seeks to expand the interpretation of this request any further, it is certainly overly broad, burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

---

[2] No documents were produced regarding Mr. Burke or Mr. Gibbons because these two individuals left F&G's employment well before either Mr. Wilkey or Mr. Keating left. Any alleged solicitation of them to come to CNA could not be actionable or relevant. This objection was further discussed in Defendants' counsel's April 4 letter in which Plaintiff's counsel was invited to advise as to any theory regarding the possible relevance of these documents for Mr. Burke and Mr. Gibbons. Plaintiff has not attempted to proffer any such theory in response to Defendants' letters and did not submit any proof at the arbitration regarding any improper solicitation of Mr. Gibbons or Mr. Burke.

## II.   DEFENDANTS HAVE PRODUCED DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUESTS.

Defendants have complied with their discovery obligations in this case. As stated in Plaintiff's Memorandum in Support, "Discovery has been on-going since last year, and the parties have exchanged volumes of documents and produced substantial amounts of computer discovery." Plaintiff's Memorandum at p. 2, footnote 2. Plaintiff's many broad discovery requests have made this litigation extremely expensive, disruptive and time consuming for the Defendants. More importantly for purposes of this motion, however, is the fact that Plaintiff has already received many documents which would be responsive to the requests at issue and which relate more directly to the claims now made by Plaintiff in its Motion to Compel than any other documents that might be located by further burdensome searches.

As Plaintiff points out, this case and the related arbitration are based upon the provisions of the agreements signed by Mr. Wilkey and Mr. Keating. Plaintiff claims these agreements contain enforceable covenants against solicitation of F&G employees and certain MGAs, as well as an alleged confidential information covenant. In addition to taking the depositions of Mr. Keating, Mr. Wilkey, other CNA employees and the representatives of the MGAs at issue, Plaintiff has received numerous documents relating to Defendants and their relationships and contacts with the MGAs which are the subject of the requests in its Motion to Compel. For example, both Mr. Wilkey and Mr. Keating have produced their records regarding communications with MGAs, including correspondence, memorandum, calendars and day-planners. At considerable expense, CNA has maintained, electronically copied mirror images and produced the personal and business computer records of these two men for the relevant time period, including their calendars and email accounts. This electronic computer information includes largely everything created or reviewed by Mr. Keating and Mr. Wilkey, including any

deleted document or email, through October 2002, when the images were copied. Defendants have also produced copies of their agreements with the MGAs at issue (which Plaintiff was unwilling to produce when requested). Although Plaintiff now claims it needs to discover "CNA's actual sales or attempted sales activities," (Memorandum in Support p. 6), Defendants have previously produced documents detailing the number of applications received for each of the two products for each MGA at issue, the number of policies actually issued, the amounts of money paid to these and other MGAs and much other information related to what might be considered "sales activities" or communications with these MGAs.

Plaintiff does not need any additional information to establish CNA in fact has business relationships with the MGAs at issue or that Mr. Keating and Mr. Wilkey have had discussions with them. That is not disputed or at issue in this case.

It is somewhat inconsistent for Plaintiff to appear at the arbitration and use information and documents from CNA to claim that the evidence proves that it has been damaged by Mr. Wilkey's and Mr. Keating's alleged actions, and then claim in this litigation that they need additional documents on these same subjects to establish its case.

The statements in Plaintiff's counsel's letters and the Memorandum in Support concerning lack of document production or "refusal" to produce documents by Defendants are simply not accurate. What Defendants have done, quite properly, is to object to conducting the further unnecessary and burdensome search that would be called for by the overly broad documents requests at issue. Such an undertaking would provide few, if any, relevant documents.

Defendants have produced documents responsive to the requests at issue. Any additional discovery pursuant to these requests would be unnecessary, cumulative, unduly burdensome.

Plaintiff has not shown any adequate reason or justification for these requests. Any minimal possible benefit (which Defendants deny even exists) is greatly outweighed by the burden and expense that would be occasioned by requiring further discovery on the requests at issue.

### III.   PLAINTIFF'S MOTION TO COMPEL SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH LOCAL RULES OF COURT.

Rule 104(8) of the Local Rules of Court for the United States District Court for the District of Maryland sets forth the "Procedure Regarding Motions to Compel." Plaintiff's Motion to Compel fails to follow the required procedure in several important particulars and for that reason alone should be dismissed.

Subsection a. of Local Rule 104(8) provides in pertinent part as follows:

> If a party who has propounded interrogatories or requests for production is dissatisfied with the response to them and has been unable to resolve informally (by oral or written communications) any disputes with the responding party, that party shall <u>serve</u> a motion to compel <u>within thirty days</u> of the parties' receipt of the response.

(Emphasis added.)

Plaintiff did not serve (or file) its Motion to Compel within thirty days of its receipt of Defendants' response. Defendants' response to the requests for production was sent by fax and by regular mail on March 7, 2002. Plaintiff never served its Motion to Compel until June 27, 2003, several hours <u>after</u> it was <u>filed</u> with the Court. Thus, the serving of such motion is much more than thirty (30) days from Defendants' response and, therefore untimely under Local Rule 104(8)a.

Local Rule 104(8)a also describes a procedure wherein the Motion to Compel and Memorandum are to be <u>served</u> on opposing counsel, <u>not</u> filed with the Court. After service of such a motion, opposing counsel is directed to serve its memorandum in opposition, which in

turn is to be followed by any reply by the moving party.  The Rule specifically states: "The parties shall file with the Court notices of service of the motion and memorandum <u>but</u> <u>not</u> the motion and memorandum." (Emphasis added.)  The procedure does not allow for actually filing the Motion to Compel until after certain other steps are taken, including a conference of counsel.  Local Rule 104(8)b.  The actual filing of the motion is not supposed to occur until after such a conference of counsel and then, when filed, must be accompanied by a certificate of counsel as set forth in Rule 104(8)c.  Plaintiff's Motion to Compel was filed without following the procedure dictated by the Local Rules and without the required certificate of counsel.  Although counsel have obviously exchanged letters regarding the discovery requests at issue, Plaintiff's counsel has failed to follow the required procedure for a Motion to Compel discovery in this district.  Plaintiff's Motion to Compel must be dismissed for failure to follow these rules.

### IV.     <u>PLAINTIFF IS PURSUING THIS DISCOVERY FOR IMPROPER PURPOSES.</u>

Defendants are concerned that the main purposes for Plaintiff continuing to pursue this discovery at this stage of the litigation is to harass these Defendants and make this litigation as burdensome as possible for them.  Defendants submit such improper purposes are evidenced by the manner in which Plaintiff has conducted the entire arbitration and litigation.  Plaintiff has already received a significant amount of information and documents on the same subjects as the requests at issue in this Motion to Compel.  As previously discussed, Plaintiff is unable to articulate any specific relevance or any specific reason for needing the documents that may be responsive to these overbroad requests beyond simply pointing to the language of the agreements at issue.  The requests are unfocused and, as Plaintiff is now well aware, if CNA has to undertake

such a search it would result in a large quantity of totally irrelevant but perhaps arguably responsive documents.  (See discussion at pp. 5-6, supra.)

In this litigation and arbitration, Plaintiff has had ample opportunity to obtain discovery from Defendants on these issues and has availed itself of that opportunity to the fullest extent possible.  Plaintiff spent approximately five days putting on its "case" in the recently completed arbitration.  It rings very hollow for it to file and serve this Motion to Compel on the Friday afternoon the arbitration was completed, saying it needs Defendants to search for more documents.  Plaintiff is arguing to the arbitrator that he should award damages to it based upon the actual numbers of applications received by CNA through the MGAs at issue and is now arguing in this case that Defendants have not produced documents relating to its "sales efforts" sufficient to establish its case in litigation, based upon the substantially similar set of facts.

At this stage of the litigation and under the circumstances set forth hereinabove, it can certainly be concluded that Plaintiff's continuing pursuit of this unnecessary discovery through the filing of a Motion to Compel is to harass the Defendants and make this case more burdensome for them.

### V.     DEFENDANTS SHOULD BE AWARDED ATTORNEY FEES AND COSTS FOR RESPONDING TO THIS MOTION TO COMPEL.

Rule 37(a)(4) of the Federal Rules of Civil Procedure provides the authority for awarding Defendants their costs and attorneys' fees in responding to Plaintiff's Motion to Compel by stating that if such a motion is denied, the court shall require the moving party or its attorney to pay the reasonable expenses, including attorneys' fees unless the court finds the making of the motion was "substantially justified" or the award is otherwise "unjust."  Defendants should be awarded their costs and attorneys' fees in responding to Plaintiff's Motion

to Compel in this case. Considering this late stage of the litigation and the amount of discovery already provided, Plaintiff simply cannot demonstrate that bringing this motion to compel discovery on such broad, unfocused requests was justified. Such an award is important in this case because, otherwise, there is no penalty or deterrent for Plaintiff to continue to use the discovery process to make this litigation as burdensome and expensive as possible.

Rule 26(g) provides additional authority for the award of attorney fees and costs. Under that rule the signing of every discovery request constitutes a certification by the attorney that the request is "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and is "not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation." The court shall impose sanctions for a certification in violation of that rule made without substantial justification. The sanctions may include reasonable expenses and attorneys' fees incurred by the other party because of the violation. Rule 26(g)(3).

Plaintiff's discovery requests and the filing of the Motion to Compel demonstrates that Plaintiff has violated those discovery rules. Given the stage of this litigation and the amount of discovery already obtained, Plaintiff's attempts to require Defendants to conduct further unnecessary and burdensome searches fully support a finding that Plaintiff's discovery efforts are in fact unreasonable, unduly burdensome and interposed to harass the Defendants and needlessly increase the cost of the litigation. This court should award attorneys' fees and costs to the Defendants under the circumstances set forth above pursuant to Rule 26(g)(3).

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion to Compel must be dismissed and Defendants awarded all costs and attorneys' fees incurred in responding to such motion.

Respectfully submitted,

_____/s/_____
Gregg L. Bernstein
Thy Christine Pham
Martin, Snyder & Bernstein, P.A.
217 East Redwood Street
Suite 2000
Baltimore, MD  21202
(410) 547-7163
(410) 547-1605 facsimile

Ronald G. Harris
Aubrey B. Harwell, III
Neal & Harwell, PLC
2000 One Nashville Place
150 Fourth Avenue, North
Nashville, TN  37219-2498
(615) 244-1713
(615) 726-0573 – Facsimile

*Counsel for Defendants CNA Financial Corporation; Continental Assurance Co., Valley Forge Life Insurance Co. and Kenneth D. Keating*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of July, 2003, a copy of the foregoing Defendants' Memorandum in Opposition to Plaintiff's Motion to Compel Responses to Plaintiff's Second Request for Production of Documents was electronically filed with the United States District Court for the District of Maryland, and electronically served on:

>Stephen D. Shawe, Esq.
>Patrick M. Pilachowski, Esq.
>Shawe & Rosenthal, LLP
>20 S. Charles Street, 11th Floor
>Baltimore, MD  21201

                                             /s/
                                     T. Christine Pham